# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN STYX and ILIAN STEFANOV, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 09 C 5960 |
| | ) |
| WELLS FARGO BANK, N.A., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Defendant Wells Fargo Bank, N.A. removed this case to federal court shortly after plaintiffs John Styx and Ilian Stefanov filed a second amended complaint, which they filed on behalf of a putative class of similarly situated plaintiffs. Wells Fargo based the removal on the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d). Styx and Stefanov have moved to remand the case to state court. The parties agree that remand turns on whether "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." *Id*. § 1332(d)(2)(A).

## Background

Styx and Stefanov purchased real estate of which Wells Fargo was the seller or the seller's agent. They entered into standard form contracts that called for closing to take place on a particular date scheduled by Wells Fargo. They attended and did what they were required to do, but no one from Wells Fargo attended. Wells Fargo had sent documents and instructions to the closing agent (a title company) in advance of the

closing.  The instructions directed the title company not to disburse funds or turn over possession of the real estate to the purchaser until Wells Fargo gave approval.  Wells Fargo then withheld approval for several days.  As a result, Styx and Stefanov did not get title or possession when they were supposed to.  This, they allege, breached their contracts with Wells Fargo.  They allege that they suffered actual damages consisting of the incremental amounts of interest they paid on their mortgage loans and for property insurance for the period of delay, plus the absence of a "tax proration" that covered the extra days before the actual transfer of title, and the loss of use of the funds they put up for the sale for the period of delay.

The plaintiffs allege that Wells Fargo has a pattern and practice of engaging in this sort of conduct when it is the seller or agent for the seller of real estate.  They seek certification of a class consisting of all persons who from May 1999 through the present contracted to purchase real estate in Illinois from Wells Fargo or with Wells Fargo as selling agent for another mortgage lender and who suffered financial loss because Wells Fargo delayed completing the closing and transfer of title beyond the scheduled date.

In the second amended complaint that they filed in state court, plaintiffs added claims under the Illinois Consumer Fraud Act (ICFA).  They allege that Wells Fargo has engaged in an ongoing practice of representing that closing will take place at a particular time while concealing that it does not intend to proceed at that time; concealing the fact that the purchaser will not receive title or possession on the date set for closing; and making misrepresentations regarding the tax proration amount based on the scheduled closing date.  They allege that Wells Fargo knew in advance that it

would not have anyone attend the closings it had scheduled.

The plaintiffs' actual damages on the ICFA claims consist of the same actual damages sought on the breach of contract claims. Plaintiffs also include a request for attorney's fees, though the parties agree that this does not count toward the $5,000,000 threshold. Plaintiffs make no reference to punitive damages in their second amended complaint. For the ICFA claims, plaintiffs seek certification of a class of all purchasers from May 1, 2006 to the present, a significantly shorter period than the proposed breach of contract class.

In removing the case, Wells Fargo contended that "there are at least 10,000 purchase transactions potentially at issue here for the period of 2006 through 2009 alone." Notice of Removal ¶ 16. Wells Fargo based this contention on the affidavit of Mary Sohlberg, a vice president of the bank's "structured products group." Sohlberg said that she made her affidavit "based upon my personal knowledge and based on information obtained from company records and individuals with knowledge of the matters described herein." Sohlberg Affid. ¶ 2. On the contention regarding the number of transactions, Sohlberg said that "[b]ased on my inquiry of certain employees [with knowledge], I determined that for the period of 2006 through 2009, Wells Fargo was the seller of more than 10,000 properties in the State of Illinois." Id. ¶ 4.

In its notice of removal, Wells Fargo also noted that plaintiffs' counsel had told the state court that one of the plaintiffs had suffered about $90 in damages. If that is the average, Wells Fargo argued, the actual damages would reach around $900,000 for 10,000 potential plaintiffs. And that figure, Wells Fargo stated, accounted only for three years of the class period for the breach of contract claims. Wells Fargo also noted that

3

punitive damages are available on the plaintiffs' ICFA claim and that "[t]he Supreme Court has noted that punitive damages will not offend due process as long as they are less than the compensatory damages award multiplied by ten." *Id.* ¶ 18. Wells Fargo inferred from this that punitive damages could be as high as $9,000,000, well over the CAFA threshold by itself.

In seeking remand, plaintiffs argued that "any contention that the amount in controversy will exceed $5,000,000.00 [is] highly speculative without any basis in fact." Pls.' Mot. Contesting Jurisd. ¶ 4. They made a detailed argument for the proposition that actual damages for the class would not exceed $2,000,000.

Plaintiffs first attacked the figure of 10,000 potential plaintiffs for 2006-09 proposed by Sohlberg in her affidavit. They argued that to the extent Sohlberg relied on what others told her – which is what she said she did to derive the 10,000 figure – her affidavit was inadmissible hearsay. Second, plaintiffs pointed out that even if the Sohlberg affidavit is correct, it assumes that all closings were delayed. Plaintiffs note that they served interrogatories on Wells Fargo to try to ascertain the number of closing that actually were delayed but that Wells Fargo had declined (at least for now) to answer them.

Third, plaintiffs' attorney, acting as a summary witness, stated in an affidavit that he had examined records to determine the total number of deeds recorded in Cook, DuPage, and Lake Counties with Wells Fargo as grantor for the entire breach of contract class period of May 1999 through November 2009. The total was 4,088. These counties, counsel noted (with supporting data), constitute fifty-four percent of the total population of Illinois. Extrapolating on that basis yielded an estimated total of

4

7,570 Illinois deeds on which Wells Fargo was grantor during the longer breach of contract class period. Plaintiffs rounded this figure up to 8,000 for the sake of argument.

Plaintiffs then proposed an analysis for why the total actual damages would be well under $2,000,000 even under a best-case (for them) scenario:

- First, drawing on the damages claimed by Styx – actual damages of $87.44 based on a purchase price of $75,000 and a five day delay – and Stefanov – actual damages of $220.56 based on a purchase price of $120,650 and an eight day delay, plaintiffs argued that actual damages are likely to average 0.025% of the purchase price per day of delay. (That is a smidgen above the percentage for Styx and Stefanov.)

- Second, plaintiffs' attorney provided an affidavit detailing his review of the recordings of all deeds in Lake County, Illinois from May through November 2009 in which Wells Fargo was the "grantor." The average sale price was about $118,000. Though noting that Lake County has the highest cost of living in Illinois, plaintiffs' attorney adopted for his calculation a higher average sale price, $130,000.

- Third, using the longer eight day delay Stefanov experienced as the median (a generous assumption), the damages, based on the 0.025% and $130,000 figures noted above, would work out to $236 per plaintiff.

- Fourth, $236 multiplied by 8,000 comes out to a total of $1,888,000 in actual damages.

In their motion, plaintiffs made no specific reference to the possibility of recovery

of punitive damages on their ICFA claim. Wells Fargo made this omission the centerpiece of its response to the motion to remand.

In reply, plaintiffs indicated that their omission of punitive damages from the calculation was deliberate. They noted that Illinois allows punitive damages only when misconduct is "outrageous, either because the defendant's acts are done with an evil motive or because they are done with reckless indifference to the rights of others." *See, e.g., Loitz v. Remington Arms Co.*, 138 Ill. 2d 404, 415-16, 563 N.E.2d 397, 402 (1990) (internal quotation marks and citation omitted). Plaintiffs pointed out that they had made no such allegation in their second amended complaint and also noted that Illinois does not permit recovery of punitive damages for breach of contract or ordinary negligence. They stated that "[a] review of the complaint filed in this case shows that **plaintiff is not claiming to be entitled to punitive damages.** Further, that under Illinois law the plaintiff could not recover punitive damages. . . . The only damages that can be awarded are the actual damages and those fall short of the jurisdictional amount." *Id.* at 5 (emphasis in original).

Plaintiffs also offered information that they had obtained via third party subpoena. They subpoenaed three title companies for all recorded deeds with Wells Fargo as grantor. A total of 140 were produced, and of those only forty-two involved delayed closings, just thirty percent of the total, and most of those delays were only one to three days, much lower than the estimate plaintiffs had used to make their hypothetical actual damages calculation. The average sale price was just under $200,000. Using this figure, the 0.025% per day calculation described above, and an average three day delay, the average damages per delayed sale would be $150, less

than the figure they had estimated earlier. That would require 33,334 delayed closings to produce $5,000,000 in damages.

At a status hearing held in early February, the Court suggested to Wells Fargo the filing of a more detailed and better supported affidavit than the Sohlberg affidavit. In its supplemental brief, filed in late February, Wells Fargo appears to have abandoned the Sohlberg affidavit, though that is not entirely clear. It submitted an affidavit from John Hyle, Wells Fargo's vice president of "default servicing management." Hyle says that Wells Fargo is involved in "securitization" of mortgage loans via trusts of which it acts as trustee and master servicer. As trustee, Wells Fargo owns the loans on behalf of the "certificate holders at the end of the securitization transaction." Hyle Affid. ¶ 3. As master servicer, Wells Fargo consolidates monthly reports and fund remittances from third party servicers, who are responsible for collection and application of borrowers' payments. *Id.* Hyle reviewed compiled information that reflected that from August 1999 through September 1999, 13,329 sales took place of "residential property where Wells Fargo acted as Trustee or Master Servicer." *Id.* ¶¶ 4-5. Defendants did not dispute plaintiffs' proposed actual damages calculation but again argued that the possibility of recovery of punitive damages would carry the total potential damages over $5,000,000.

In their final reply brief, plaintiffs pointed out that Hyle's affidavit said nothing to suggest that the sales the affidavit referenced had anything to do with the class claims in its suit. Plaintiffs referenced the pertinent allegations in their second amended complaint, which is brought on behalf of purchasers who "contracted to purchase residential property in Illinois from Wells Fargo, or with Wells Fargo as selling agent for

7

another mortgage lender." Pl. Reply (docket no. 40) at 1. Sales by third party servicers, plaintiffs argued, are not part of the class claims in this case, which are based on contractual relationships with Wells Fargo.

The Court also notes that plaintiffs breach of contract and ICFA claims are premised upon Wells Fargo's conduct in connection with closings that it conducted or set up. Hyle's affidavit did not suggest or even hint that Wells Fargo conducted or set up closings for sales of properties involved in "securitized" mortgage loans.

## Discussion

As the Court noted at the outset of this decision, determination of whether to remand the case to state court turns on whether "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." *Id*. § 1332(d)(2)(A).

Wells Fargo argues repeatedly that it is required to show only a "reasonable probability" that the jurisdictional threshold is met. The Seventh Circuit, however, has recently made it clear that this phrase has "no provenance" and that it has been "banished from [the court's] lexicon." *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

In *Meridian*, the Seventh Circuit clarified, in clear and concrete terms, who has to prove what when federal jurisdiction is contested. In a removed case, "[t]he removing defendant, as proponent of federal jurisdiction, must establish what the plaintiff stands to recover." *Id.* at 541. In making that determination, what is relevant is what the plaintiff claims, not the likelihood the plaintiff will win or awarded everything he seeks. *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005). If factual

8

contentions material to the issue of jurisdiction are contested, however, the proponent of jurisdiction must prove them by a preponderance of the evidence – the *admissible* evidence. *Id.* at 542, 543. Once the facts material to jurisdiction have been established, the estimate of the claim's value offered by the proponent of jurisdiction "must be accepted unless there is a 'legal certainty' that the controversy's value is below the threshold." *Id.* at 542; *see also id.* at 543; *Brill*, 427 F.3d at 448.

This is a case in which facts material to jurisdiction are, in fact, contested. A key contested fact concerns the likely size of the putative class. Wells Fargo started out contending that 10,000 transactions were at issue for just the ICFA class, indicating a much larger number for the breach of contract class. But the Sohlberg affidavit, on which that contention was based, does not qualify as admissible evidence. The rules of evidence permit a witness to summarize the contents of voluminous records. *See* Fed. R. Evid. 1006. But Sohlberg's statement that there were 10,000 transactions from 2006 through 2009 was expressly premised on what someone else told her. Repeating someone else's statement to prove its truth is hearsay, and inadmissible.

Even were the Court to consider Sohlberg's affidavit, it does not establish by a preponderance of the evidence that the case involves anywhere near the number of transactions that she suggests. The affidavit provides no support but rather states only a bare conclusion. By contrast, the affidavit submitted by plaintiff's attorney – who, unlike Sohlberg, properly summarizes voluminous documents and does not repeat what others have said – is amply supported. It tends to show that the overall number of transactions involved in the breach of contract claim (for the entire ten years it covers)

is around 8,000.[1]

Wells Fargo does not contest, for present purposes, plaintiffs' methodology for calculating actual damages, which is the same for both the breach of contract and ICFA claims. In other words, it does not contend that plaintiffs are understating the basis or amount of any actual damage award. Plaintiffs' proposed methodology makes sense and is, like their estimate of the number of transactions involved, amply supported. For these reasons, Wells Fargo has not shown that, if successful, plaintiffs "stand to recover" actual damages in excess of $2,000,000 in the aggregate.

The Hyle affidavit does not assist Wells Fargo in carrying its burden of proving disputed jurisdictional facts. More specifically, that affidavit does not tend to show that more than 8,000 transactions are at issue. Plaintiffs have defined the class to include only those who purchased property from Wells Fargo or with Wells Fargo acting as the agent for the seller, *and* as to which Wells Fargo scheduled a closing date. Hyle's affidavit, which concerns securitized pools of mortgages for which Wells Fargo acts as trustee and master servicer, does not suggest that Wells Fargo is the seller of properties subject to mortgages in those pools or that it acts as the seller's agent when a property subject to one of the mortgages is sold. Nor does Hyle suggest that Wells Fargo has anything to do with scheduling closings when such a property is sold. That being the case, Hyle's affidavit adds nothing of consequence to the mix of evidence.

Wells Fargo largely hangs its jurisdictional hat on the potential for punitive

---

[1] The later affidavit by plaintiff's attorney indicates that it is more likely than not that only some fraction of the overall number of transactions involved a delayed closing, but the Court need not consider that affidavit for present purposes.

damages. "[P]unitive damages can satisfy the minimum amount in controversy required for diversity jurisdiction if they are recoverable under state law." *Casey-Beich v. United Parcel Serv., Inc.*, 295 Fed. Appx. 92, 94 (7th Cir. 2008).[2] As plaintiffs point out, however, Illinois law does not allow punitive damages as a matter of course in tort or statutory tort cases. Rather, Illinois law permits an award of punitive damages only "when torts are committed with fraud, actual malice, . . . or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Cirrincione v. Johnson*, 183 Ill. 2d 109, 115-16, 703 N.E.2d 67, 70 (1998); *Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 858, 658 N.E.2d 1325, 1336 (1995) (ICFA case).

Illinois is a fact-pleading jurisdiction, *see, e.g., Estate of Johnson v. Condell Mem. Hosp.*, 119 Ill. 2d 496, 509-10, 520 N.E.2d 37, 42-43 (1988), and as a result a bare allegation of malice is insufficient under Illinois law to support a claim for punitive damages. *See, e.g., Guice v. Sentinel Techs., Inc.*, 294 Ill. App. 3d 97, 111, 689 N.E.2d 355, 365 (1997). But here plaintiffs did not even make a conclusory allegation of malice or any other basis that would support an award of punitive damages under Illinois law. In short, plaintiffs' state court complaint, on which the propriety of removal depends, did not set forth a basis to recover punitive damages. Because an Illinois court would not award punitive damages based on the second amended complaint as alleged, the possibility of punitive damages cannot get Wells Fargo past the jurisdictional threshold.

---

[2] Though *Casey-Beich* is an "unpublished" decision, it may be cited as authority because it is dated after January 1, 2007. *See* Fed. R. App. P. 32.1(a).

11

For these reasons, Wells Fargo has failed to meet its initial burden of showing that the proposed plaintiff classes, if successful, stand to recover more than $5,000,000. The case must be remanded to state court.

**Conclusion**

For the reasons stated above, the Court grants plaintiff's motion contesting jurisdiction [docket no. 12]. Defendant's motion to dismiss is terminated without prejudice [docket no. 22]. The Clerk is directed to remand the case to the Circuit Court for the Nineteenth Judicial Circuit (Lake County, Illinois).

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 24, 2010